WILLIAM P. BRIGGS *v.* GEORGE B. OAKS. AND THE SAME
*v.* JULIUS H. BOSTWICK.

*Reference. Issue. Landlord and Tenant. Replevin.*

Where the parties mutually agree upon a reference of a suit; by the practice in this State it is understood, that the subject matter of the suit is referred, without reference to the form, and the referee may decide the case upon its merits upon any state of evidence, which could be admitted, by any amendment, in the power of the court to grant; and when the parties refer the case, " to be decided according to law," this limitation in the rule of reference, upon the power of the referee, is to be understood to refer to the merits of the case, rather than to the form of the issue.

*Davis* v. *Campbell,* 23 Vt. 236. *Eddy* v. *Sprague,* 10 Vt. 216, and *Maxfield* v. *Scott,* 17 Vt. 634, cited with approbation, as to the practice in this State, in regard to the reference of causes.

Where a case is referred, the reference will not fail, even where it appears on trial, that the party has mistaken his form of action. REDFIELD, CH. J.

Briggs *v.* Oaks.   Same *v.* Bostwick.

If the landlord leases the stock, with the farm, to a tenant, upon shares, and there is an actual or implied contract between them, that the yearlings raised from the cows upon the farm, shall be kept upon the farm until the expiration of the term of the lease; by this contract, the tenant's title to one-half of the year-lings, as an independent and absolute tenant in common, will not become per-fected until he has fulfilled his contract; and any attempt, on the part of the tenant to dispose of them, before he has fulfilled his contract, will be such a wrong, as will determine the tenancy as to the yearlings.

And the landlord under such a contract, may be regarded as the general owner of the stock, and as having the paramount title, and the tenant as owning one-half conditionally, that is, when the term expires, if he performs his contract; and if the tenant, without the consent of the landlord, disposes of the yearlings be-fore the term has expired, and before he has fulfilled his contract, the landlord may maintain replevin for the yearlings, both in the *cepit* and *detinet.*

And where the contract provides that the property shall remain on the farm until the expiration of the term of the lease, and then be divided, the tenant has no absolute vested right in the property until the expiration of the lease.

REPLEVIN for 24 yearlings.   The cases were referred under a rule of court, by agreement of the parties, "to be decided accord-ing to law," to referees, who reported substantially the following facts :

That the plaintiff owned a farm in Richmond, with the stock and tools thereon, which he leased to one Jonathan and John G. Taggart for the term of two years from April first, 1849.   That the contract as to the lease and its provisions was a verbal one, but the parties referred to a previous written lease between plain-tiff and one Stearns, as containing substantially the terms of the contract between them.   The farm by the terms of the written lease was let upon shares, and said Stearns was to pay plaintiff for one-half of the cows, and the same were to remain plaintiff's un-til paid for, and none of the cows were to be sold without the con-sent of both parties, and so with the butter and cheese made on the farm, &c.   And to cultivate the farm in a husband-like man-ner, &c.

That the terms of the written lease were varied in some respects by a verbal agreement between the plaintiff and the Taggarts; and that by said agreement, the plaintiff was to furnish all the cows kept on the farm, and they were all to remain his property until the Taggarts paid him for one-half of them.   That the Taggarts were to raise twenty-five calves from the said cows upon the farm ; and that each party was to own one-half thereof.   That said Tag-.

garts took possession of the farm and stock in April, 1849, and carried on the farm under the lease. The twelve yearlings in controversy were calves in the spring of 1849, from the cows thus leased by plaintiff. The referees decided that plaintiff owned one-half of the calves, and that the Taggarts owned the other half.

They also found that in the summer of 1849, Jonathan Taggart agreed with plaintiff, that if he would assume certain debts which they owed, and would advance them flour, pork, and other articles that they might want in carrying on the farm, that all their share of the personal property then or thereafter to be raised or made on the farm, should belong to the plaintiff, and be held by him as security for the payment of whatever balance might be found due from them to plaintiff on a full settlement thereafter, including all such debts so assumed and all advances and debts accruing thereafter. That the plaintiff thereupon assumed the debts and made the advances.

That the son, John G. Taggart, was soon after informed of the agreement, and assented to it, by remaining on the farm and receiving the benefit of it, without objecting to the terms of the agreement. That when this agreement was made the twelve yearlings, (then calves,) were on the farm and in the possession of the Taggarts, and so remained until the summer of 1850, when the pasturage being insufficient, they were removed to another pasture of the plaintiff's, (not leased to the Taggarts,) where they remained until after haying, a period of about three months, when they were again taken back to the farm leased to the said Taggarts, and there remained till John G. Taggart sold and delivered them to one Bennett, about the 4th day of November, 1850.

That on the 15th day of August, 1850, Jonathan Taggart died, and in October, 1850, the plaintiff was appointed administrator of his estate, and as such went into possession jointly with John G. Taggart of said farm and stock. And that on or about the 4th of November, 1850, the twenty-five yearlings being on the farm, and in the joint possession of plaintiff and said John G., the latter, without the consent or knowledge of plaintiff, sold to one Bennett and Shepard the equal and undivided half of the yearlings, and delivered them to said Bennett, who, without the knowledge or consent of plaintiff, removed them from the farm and drove them to his own field.

The referees found that there was no express agreement, that the calves should be kept on the farm, and not removed therefrom without the consent of either party till the expiration of the lease. But that good husbandry, and the proper and profitable management of the farm and stock, required that they should be raised and kept on the farm till the expiration of the lease. And that it was understood between the parties, that the twenty-five calves were to be raised for the purpose of stocking the farm, and of supplying with these calves, the places of such animals as might die or be sold from the farm. That therefore there was an implied agreement between the parties, that the calves should be raised and kept on the farm till the expiration of the lease; and that as between the plaintiff and said Taggarts, neither party could remove the animals from the farm during the lease, without the consent of the other.

That a few days after the sale by said John to said Bennett, as aforesaid, the plaintiff retook possession of the twenty-five yearlings, and drove them back to the farm; that they remained on the farm in possession of plaintiff till about the 24th day of November, 1850, when said Bennett demanded possession of them, which the plaintiff refusing, said Bennett with force and violence, and with the aid of a number of men, after a severe contest with the plaintiff, seized the cattle and drove them away; that soon after, he and said Shepard, without the knowledge or consent of the plaintiff, drove them to Jerico, and sold, not the moiety, but the twenty-five yearlings to the defendant, Oaks, and to one Bostwick; that said Oaks and Bostwick divided the cattle between them, that said Bennett and Shepard sold the twenty-five yearlings for $240, warranting the title thereof to said Oaks and Bostwick, and in said division Oaks, the defendant, took the twelve claimed in this writ; that a few days after, the plaintiff demanded possession of the said twelve yearlings of Oaks, which he refusing, the plaintiff brought the present suit of replevin.

The referees decided that neither John G., nor any purchaser under him, had the right to take the yearlings from the possession of the plaintiff and from the farm, till the expiration of the lease; that the plaintiff had the right to retain the possession of the yearlings and keep them on the farm till the expiration of the lease, and for that purpose had the right to demand them from Oaks,

the defendant, and that upon such demand being made, defendant's detention of them was unlawful.

The county court rendered judgment on the report for the plaintiff.

Exceptions by defendant.

*Underwood & Hard* for defendant.

The contract, between Briggs and Jonathan Taggart, being void as to subsequent purchasers, for want of a change of possession, the plaintiff's title to the yearlings in question, depends solely upon the construction and effect of the original contract between Briggs and the Taggarts. As to the effect of that contract, the defendant insists,

1. That it is in terms and effect a *lease* of the farm, and that consequently Briggs had no legal interest in the products until actual delivery. The written contract between Stearns and Briggs, which the referees find was adopted in the subsequent contract between Briggs and the Taggarts, contains all the technical words appropriate and necessary to constitute a lease. *Hurd* v. *Darling*, 14 Vt. 214. *Hurd* v. *Darling*, 16 Vt. 377. *Noyes Adm.* v. *Maxwell*, 14 Vt. 14. *Hadley* v. *Havens*, 24 Vt. 520. *Stewart* v. *Doughty*, 9 Johns. 108.

2. That if the contract between Briggs and the Taggarts, did not amount to a lease, the parties thereto were joint owners of the products of the farm, and the defendant having purchased the interest of John G. Taggart therein, became *tenants in common* with the plaintiff, of the property in question. Consequently this action cannot be maintained. *Putnam* v. *Wise*, 1 Hill 234. *Ladd* v. *Billings*, 15 Mass. 15. *Prentice* v. *Ladd*, 12 Conn. 331. *Schrogham* v. *Carter*, 12 Wend. 131. *Barnes* v. *Bartlett*, 15 Pick. 71. *Willis* v. *Noyes*, 12 Pick. 324.

The case of *Lewis* v. *Lyman*, 22 Pick. 437, relied upon by the plaintiff, is not in the least inconsistent with the defence in this case. That was an *action on the case* against a sheriff for the default or misconduct of one of his deputies, in attaching and selling the tenants interest in some hay, and calves, raised under a contract similar, in most respects, to the contract in the present case; the court held that the plaintiff was entitled to recover only such damages, as would put him in as good a situation, as to property,

as he would have been in, if the wrongful act of which he complained, had not been committed by the defendant, and not the *value of the property.*

*Wm. P. Briggs* and *Peck & Bailey* for plaintiff.

1. The report of the referees is conclusive, and the court will not look into it, with the view to correct the errors relating to questions of law. *White* v. *White*, 21 Vt. 254. *Eddy* v. *Sprague*, 10 Vt. 216. *Davis* v. *Campbell*, 23 Vt. 236. *Maxfield* v. *Scott*, 17 Vt. 634.

2. The right of Taggart, the tenant, was in the nature of a *chose in action*, an *inchoate* right growing out of an executory contract and dependent upon the ultimate performance of the contract. *Lewis* v. *Lyman*, 22 Pick. 437. *Paris* v. *Vail et al.*, 18 Vt. 277.

3. In every contract of tenancy of this kind, the law upon the bare relation of landlord and tenant, implies an agreement, that the tenant is to carry on the farm in a prudent and husband-like manner. *Brown* v. *Marshall*, 1 Marsh 567. (4 E. C. L. 349.) *Lewis* v. *Lyman*, 22 Pick. 437.

4. It is well established, that if the agreement, by which the products of the farm and stock was to be the property of the plaintiff until he was paid for the advances he made, and the liabilities he incurred, had been a stipulation in the original contract, the creditors of the Taggarts could acquire no interest in the property by attachment. *Smith* v. *Atkins*, 18 Vt. 461.

This case differs materially from an ordinary case of sale or mortgage of personal property where the vendee or mortgagee had no previous interest in the property. The Taggarts having no interest in the property, except by virtue of the original contract, and the plaintiff being the owner of the farm and the stock thereof, in which the property in question is the issue, was notice to the world of a paramount interest in the landlord, and whoever took the interest of Taggart, is bound by the actual relation of the parties to the property, and no change of possession is necessary. *Griswold* v. *Smith*, 10 Vt. 452.

The opinion of the court was delivered by

REDFIELD, CH. J. These two actions were referred by rule of court, to be decided according to law. It is said in *Davis* v.

*Campbell,* 23 Vt. 236, that this limitation, in the rule of reference, upon the power of the referee, is to be referred to the merits of the case, rather than the form of the issue.   And in *Eddy* v. *Sprague,* 10 Vt. 216, it is considered, that when a case is referred, the referee may decide the case upon its merits upon any state of the evidence, which could be admitted by any amendment in the power of the court to grant.   The same rule has been repeatedly recognized in other cases, by this court.   We have not therefore on this point had occasion to go farther.   But the case of *Maxfield* v. *Scott,* 17 Vt. 634, seems to go the length of saying it is the subject matter of the suit referred, without reference to form, and that seems sensible and sound.   It is by no means certain that the rule cannot safely go that length.   I cannot comprehend, why the reference should fail, even where it appears on trial that the party has mistaken his form of action.   It is perfectly within the power of the court to allow an amendment changing the form of action, if the declaration still describes the same cause of action.   This is every day's practice in the English courts, when it is desired. In this state, be sure, we have not commonly allowed such amendments, perhaps, on account of our attachment law, and the liability of special bail.   And in many other particulars of civil procedure we are almost half a century behind the courts in Westminster Hall.   I am sorry always to turn a party out of court, after his case is tried, and especially by a referee agreed to by the parties, and he is shown to have a just cause of action, upon the merest shadow of a form that either is already, or is speedily destined to be exploded.   And especially where repeated decisions, at common-law can be found, disregarding it.   And that it was competent for the county court to have allowed an amendment, in this case changing the form of action, will be seen by referring to 1 Chit. Pl. 197.   *Billings* v. *Flight,* 6 Taunton 419.   *Leavitt* v. *Kebblewhite,* 1 Taunt. 483, 459.   Barnes' Notes 5.   1 Petersdorff 524.   But this is done under a rule to exonerate bail.   This alone disposes of the case.

But if the case of *Lewis* v. *Lyman,* 22 Pick. 437 is sound law, and I confess myself disposed to so view it, I think there is no difficulty in holding, that the action of replevin will lie in this case. That contract was almost identical with the present.   One would almost believe this contract was copied from that report, its cor-

respondence is so remarkable.  And the referees have found in this case and there is every reason to suppose the finding according to the equity and justice of the case and the expectation of the parties, that there was an implied understanding that these yearlings should be kept upon the farm till the expiration of the term.  Thus by the contract virtually, Taggarts title to one-half the property, as an independent and absolute tenant in common, would not become perfected until they had fulfilled their contract. This being so, any attempt to dispose of them would be such a wrong as would determine the tenancy.  It has been held, in regard to real estate, that repudiating the tenancy, by the tenant, and denying the title of the landlord worked a forfeiture of the term, and would enable the landlord, to maintain ejectment, at once.  This is familiar law in England, and is laid down in all the elementary books upon the subject.  And it would be hard if it were not so here, since we have adopted the rule in this State, that after such repudiation is made known to the landlord, the statute of limitation begins to run against him, which is equivalent to saying ejectment will lie in his favor.

And it is only applying the same principle to personal property when we hold that one having a special property in chattels, forfeits his interest, by putting them to a different use from what the contract allows.  *Swift* v. *Mosely*, 10 Vt. 208.  And here, upon the contract, and the authority of the case in 22 Pick. it seems to us, that the plaintiff may justly be regarded as having the paramount title, as the *general owner of* this stock, and the Taggarts as owning one-half conditionally, i. e., when the term expired, if they performed their contract.  This construction is consistent with the written contract and the finding of the referees, and is the only one which seems to reach the justice of the case, and is far more in accordance with sound policy, and the just rights of the parties, and the real interests of tenants, than any other.  And in this view the plaintiff might well maintain replevin, both in the *cepit* and *detinet*.  We are therefore disposed to affirm the judgment upon both grounds.

As these cattle are the offspring of cattle belonging to plaintiff, no difficulty arises in regard to his property, on account of the thing not being in existence at the time of the contract, as was held in *Smith* v. *Atkins*, 18 Vt. 461.

The case of *Hurd* v. *Darling*, 14 Vt. is in many of its features like this case, but not more so than *Smith* v. *Atkins*, 18 Vt., and in this case there was no written contract between these parties; one was referred to only, between other parties, and that was departed from by parol, thus leaving the whole matter open, and the referees have found this contract to have been, in its intention, like that of *Smith* v. *Atkins*, i. e., that the property should remain on the place till the end of the term and be then divided, which we consider as giving the tenants no absolute vested property till that time.

Judgment affirmed.