[No. 12351.  In Bank. —July 3, 1889.]

# C. E. FARNUM, RESPONDENT, v. PHILIP HEFNER, APPELLANT.

LANDLORD AND TENANT— LEASE — COVENANT NOT TO ASSIGN — EXECUTION
SALE — FORFEITURE. —The convenant of a lessee not to assign the lease
applies only to a voluntary assignment, and is not broken by an involun-
tary assignment by sale of the lessee's interest under execution; nor does
any involuntary assignment of the lease work a forfeiture, unless ex-
pressly so declared in the lease, or unless a sale is submitted to in bad
faith, or is brought about by the voluntary action of the lessee.

ID. — ACKNOWLEDGMENT OF FORFEITURE BY LESSEE— RIGHTS OF EXECU-
TION CREDITOR — RELATION. — A lessee cannot acknowledge a forfeiture
of the lease, after the levy of an execution upon his interest in the lease,
so as to affect the rights of the execution creditor.  The title under the
execution sale will relate back to the date of the levy as against such
acknowledgment, especially if there does not appear to be any other
ground or consideration for the acknowledgment than to defeat the
rights of the execution creditor.

ID. — ACTION FOR CONVERSION OF CROP BY EXECUTION PURCHASER — EVI-
DENCE. — In an action of trover against an execution purchaser of the
lessee's interest for conversion of the lessee's share of the crop, it is error
to exclude from evidence the judgment roll in the action in which the
execution was issued and levied upon the lessee's interest; and it is also
error to admit evidence of an acknowledgment of forfeiture by the lessee,
made after the levy of the execution upon the lessee's interest in the
lease.

ID. — CONSTRUCTION OF LEASE — DIVISION OF CROP. — In an action by a
landlord against the purchaser of the lessee's interest under execution
sale, to recover damages for conversion of the crop under a lease pro-
viding that the whole crop was to be delivered to the lessor and remain
his property until such delivery, and that two thirds of the crop should
upon such delivery be immediately redelivered and transferred to the
lessee, if it appears that a delivery of the whole crop harvested by the
purchaser of the leasehold interest was tendered to the lessor, and re-
fused unless the delivery was made free from any claims of such pur-
chaser, and no reason appearing why there should be any withholding of
the lessee's share of the crop for the protection of the lessor, the pur-
chaser has a clear right to retain such share without a delivery thereof
in the first instance to the lessor, and no action will lie in favor of the
lessor to recover the same, or for damages for its conversion.

APPEAL from an order of the Superior Court of Butte
County denying a new trial.

The facts are stated in the opinion of the court.

*H. V. Reardan*, for Appellant.

Any interest in real property may be taken on execution. (Code Civ. Proc., sec. 688.) A covenant not to assign is not broken by any involuntary transfer by operation of law, unless expressly prohibited. (2 Greenl. Ev., sec. 245; Wood on Landlord and Tenant, pp. 534–537; Taylor on Landlord and Tenant, secs. 403, 408, 409.) The lease would continue in force notwithstanding a breach until re-entry. (Wood on Landlord and Tenant, p. 530; *Shattuck* v. *Lovejoy*, 8 Gray, 204.) The execution purchaser of the lessee's interest was substituted to and acquired all his rights. (Code Civ. Proc., sec. 700.) A forfeiture cannot take place by consent, nor can a surrender affect rights of third parties. (*Gaskill* v. *Trainer*, 3 Cal. 340.) There can be no re-entry for breach of covenant without express provision for re-entry in case of breach. (Wood on Landlord and Tenant, sec. 506.)

*Carter P. Pomeroy*, for Respondent.

Any apt words in the lease showing that it was the intention of the lessor to limit the estate to the immediate lessee will have the effect to prevent an assignment by operation of law. (Taylor on Landlord and Tenant, sec. 409; *Davis* v. *Eyton*, 7 Bing. 54; *Cooper* v. *Wyatt*, 5 Madd. 482; *Doe* v. *David*, 5 Tyrw. 125; *Doe* v. *Clarke*, 8 East, 185; *Roe* v. *Galliers*, 2 Term Rep. 133; *Doe* v. *Hawks*, 2 East, 481.) In the lease here in question, it was evidently the controlling intention of the lessor to limit the leasehold estate to the immediate lessee. The crop was the property of the landlord by the terms of the lease, and the lessee's only possible right, had the lessor refused to deliver his share as provided in the lease, would have been to sue for breach of contract. Such a provision in the lease reserving property in a growing crop to the lessor is valid. (See *Howell* v. *Foster*, 65 Cal. 169,

and cases cited; *Smith* v. *Atkins,* 18 Vt. 462; *Paris* v. *Vail,* 18 Vt. 277; *Edson* v. *Colburn,* 28 Vt. 631; *Briggs* v. *Oaks,* 26 Vt. 138.) The evidence of the written acknowledgment of forfeiture by the lessee was proper. The defendant claiming under him is bound by the admission of the lessee made while in possession. (Code Civ. Proc., sec. 1161.)

WORKS, J.—Action to recover damages for the conversion of a lot of wheat. Judgment for the plaintiff, from which, and an order denying his motion for a new trial, the defendant appeals.

The respondent being the owner of certain real estate leased the same to one Butler for a term of years. The lease contained the following covenants: —

"And the said party of the second part does hereby covenant and agree that he will not underlet any portion of said premises nor assign this lease without the written permission of the said party of the first part, his agent or attorney, and he will, during the said term of lease, keep the buildings, corral, and other improvements now on said premises, or which may be put thereon during the terms of this lease by the said party of the first part, in good repair, damages or loss by fire excepted; that he will not commit or suffer waste to be committed thereon; and the said party of the second part further covenants that he will, in good and farm-like manner, at his own cost, charge, and expense, till and cultivate the said premises as follows, and not otherwise, to wit: That in due and proper season in the fall of 1884, he will plow to the depth of four inches, or deeper, and sow to wheat, the east one half of said premises, and in due and proper season in the spring of 1885, he will plow to the depth of four inches or deeper the west one half of said premises, and sow the same to wheat in the fall of 1885; that he will, at his own cost, charge, and expense, well and carefully tend, take care of, and protect the crops while

growing on said premises during said term of this lease; and that as soon as the same is suitable for harvesting, he will without delay, and at his own cost, charge, and expense, harvest, thrash, glean, and sack in good and new merchantable sacks, all the grain raised on said premises; *and as soon as thrashed and sacked, deliver to said party of the first part, his agent or attorney, without charge, all of the grain, one third thereof, quality and quantity considered, to be delivered in the town of Biggs, in Butte County, California, and the remaining two thirds to be delivered on the said premises.*

"And the said party of the first part hereby covenants and agrees, that upon said wheat or hay, or wheat and hay, being delivered as aforesaid, *he will immediately deliver and transfer to the said party of the second part two thirds of said wheat or hay, quality and quantity considered.*

"And it is mutually covenanted and agreed that *until such delivery and transfer by the said party of the first part all of said wheat and hay shall be the property of the said party of the first part, and the said party of the second part shall have no right to dispose of or encumber any portion thereof.*"

The appellant brought his action and recovered a judgment against Butler, the tenant, and levied his execution upon this leasehold interest in the respondent's property. After the levy of said execution, and while the lien thereof was in force, the tenant executed to the respondent the following acknowledgment of forfeiture of the lease: —

"Whereas, on account of financial embarrassment, I am unable to perform my obligations under a certain lease made by C. E. Farnum to myself on the fifteenth day of October, 1884, in the city and county of San Francisco, California, to [describing the property], and having already, to the detriment of the said C. E. Farnum, committed breach of covenant of said contract; and whereas said C. E. Farnum demands forfeiture of

said lease or contract, in order to secure himself from loss on account of such breach of contract, — now, therefore, in consideration of the foregoing, I hereby forfeit to the said C. E. Farnum the said lease or. contract with all my rights under it."

The appellant proceeded to enforce his judgment and execution lien by a sale of the property on such execution, and himself became the purchaser. He entered upon the lands under his purchase, and proceeded to harvest the wheat growing on the land. While so in possession, he was notified by the respondent to give possession of the property, and forbidden to harvest the grain. After having harvested and thrashed the grain, he tendered to the agent of the respondent the wheat, as provided in the lease. One Frank Hefner, a son of the appellant, testified as follows with reference to the delivery of and offer to deliver the wheat: —

"When I had cut and sacked the grain I visited Biggs, and notified Mr. Robinson (respondent's agent) that the grain was ready for delivery, and requested him to name the place where I should deliver it. He refused to name the place, and refused to make any division of the grain. I thereupon hauled all of the grain to Biggs and deposited it in the warehouse, had it weighed and divided, and deposited two thirds of it under one receipt, and one third under another. I again called upon Mr. Robinson and informed him that all of the grain was at the warehouse, and tendered him the receipt for one third of it, which he at first refused to accept, but in a short time concluded to and did accept the one third."

Mr. Robinson testified as follows: —

"After the grain was cut and sacked, Mr. Frank Hefner, the son of the defendant, called upon me at Biggs and notified me that the grain had been cut and sacked and was ready for delivery, and requested me to designate where it should be delivered, and also to make division. *I refused to accept the grain unless it was deliv-*

ered free from any claim by Mr. Hefner for any part of it. Afterward Mr. Frank Hefner notified me that the grain had all been delivered at the warehouse at Biggs, and weighed, and tendered me the warehouse receipt for one third of said wheat. I at first refused to receive it, but afterward accepted and received it."

At the trial the appellant offered in evidence the judgment roll in the action of himself against Butler, under which the leasehold interest of Butler was sold. Objection was made to the evidence by the respondent, and the court below excluded it, and this is assigned as error.

The respondent contends that the ruling of the court was right, on three grounds: 1. The transfer of the leasehold interest by the execution sale to the appellant was an assignment within the terms of the lease, and worked a forfeiture thereof; 2. The lease has been forfeited by the written acknowledgment of the tenant; 3. The tenant, under the provisions of the lease, had no interest in the crops harvested, and therefore no interest could pass to the appellant by the sale.

1. The first of these contentions presents the question whether an involuntary transfer of the leasehold interest of the tenant was in violation of the terms of the lease and worked a forfeiture of his estate. If so, the ruling of the court below was right. Otherwise, so far as this point is concerned, it was error. The covenant in the lease is the ordinary kind, which applies, it seems to us, to a voluntary, and not an involuntary, assignment of the lease. It is firmly established by authority that under such a covenant an involuntary assignment by sale under execution—bankruptcy and the like—is not a violation of the covenant, and does not work a forfeiture. (2 Greenl. Ev., sec. 245; Wood on Landlord and Tenant, 2d ed., p. 714; *Riggs* v. *Pursell*, 66 N. Y. 198; 1 Taylor on Landlord and Tenant, sec. 408; *Bemis* v. *Wilder*, 100 Mass. 446; *Jackson* v. *Silvernail*, 15 Johns. 277.)

If the landlord desires to avoid such involuntary trans-
fer of the leasehold interest of the tenant, he may provide
expressly in his lease that such transfer of the property
shall work a forfeiture, and the same will be effectual.
(Taylor on Landlord and Tenant, sec. 409; *Davis* v. *Eyton*,
7 Bing. 154; *Doe* v. *David*, 5 Tyrw. 125; *Roe* v. *Galliers*, 2
Term Rep. 133.)

So where it appears that the judgment and sale has
been submitted to in bad faith on the part of the lessee,
or where he voluntarily places himself in such a posi-
tion that a transfer must result, as, for example, where
he deposits the lease as security, or gives a warrant of
attorney whereby he may be dispossessed by the cred-
itor. (*Doe* v. *Hawke*, 2 East, 553.) But this is placed
upon the ground that the assignment in such cases must
be regarded as voluntary.

It is contended by counsel for respondent that where
the whole tenor of the lease shows that it is the inten-
tion of the parties that the tenant shall himself occupy
the premises, that the case is within the rule above laid
down, and that the assignment under the circumstances
of this case must be held to work a forfeiture, and cites
a number of cases, only one of which, it seems to us, has
any tendency to support the position taken. (*Doe* v.
*Clarke*, 7 East, 375.) And in that case the court puts
its decision upon the ground that the lease required as
a condition that the tenant should actually occupy the
dwelling-house on the premises, which, we think, pre-
sents an entirely different case from the one before us.

We are quite clear, from the authorities cited above,
that the transfer of this property by the judgment and
sale of the respondent did not forfeit the lease, and that
the ruling of the court cannot be sustained on that
ground.

2. As to the contention that the lease was forfeited by
the written acknowledgment thereof by the tenant, it
appears that such acknowledgment was executed after

the lien of the respondent's execution had attached, and in our judgment a voluntary acknowledgment of forfeiture at that time could not affect the rights of the appellant, and that upon a sale of the property his title would relate back to the time of the levy of his execution as against such forfeiture. Again, it appears to us, from the record before us, that there was no consideration or reason for this acknowledgment of forfeiture, unless it were to avoid the just obligations of the tenant to the respondent. There is no evidence in the case, nor does it appear from the instrument itself, that there was any cause of forfeiture, or that the respondent could in any way be injured by reason of the proceedings of the appellant. Under such circumstances, it seems to us that the forfeiture executed by the tenant must be held to be invalid as against the rights of the appellant.

3. We think the contention of the respondent that the tenant had no such interest in the wheat in controversy in this action as could pass by execution and sale does not reach the question presented. The tenant certainly had a leasehold interest in the property, under which he might, by complying with the terms of the lease, become the owner of the identical wheat raised upon the land. It is undoubtedly true, as contended, that the landlord and tenant may by agreement provide that all of the crops raised upon the land may be delivered to and remain the property of the landlord, and be disposed of by him, and such agreement will protect the title of the landlord in the property as against an attaching creditor of the tenant. But it will be found upon an examination of the cases cited by counsel that in every instance where such an agreement is upheld it is made for the protection of the landlord in case of advancements by him, or for some other reason; in other words, there is some consideration shown for the agreement by which the title remains in the landlord. And in none of the cases, so far as they have come to our

notice, has it been held that such a rule can apply where
the property, or a part of it, delivered to the landlord is
to be immediately redelivered to and become the prop-
erty of the tenant, as in this case. (*Howell* v. *Foster*, 65
Cal. 169; *Smith* v. *Atkins*, 18 Vt. 461; *Paris* v. *Vail*, 18
Vt. 277; *Briggs* v. *Oaks*, 26 Vt. 138; *Esdon* v. *Colburn*, 28
Vt. 631.)

There is no evidence in this case that there was any
reason, so far as the liability of the landlord was con-
cerned, that there should be any withholding of the
crops raised upon the land for his protection, and the
lease expressly provides that one third of the wheat shall
be delivered to him at a certain place, and the other two
thirds be delivered to the landlord on the land, and *im-
mediately* redelivered by him to the tenant. It is not
denied that the appellant, after his purchase, fully com-
plied with the terms of the lease, cut and harvested the
grain, tendered the delivery thereof to the agent of the
respondent, who refused to receive the same unless
the delivery was made free from any claim of the appel-
lant. Conceding, as contended, that the title to the
property remained in the respondent, still the tenant
would have had the right to enforce the delivery of the
grain to him under the terms of the lease, and that right
was one which would pass by the sale to the appellant,
and upon a compliance by him with the terms of the
lease, he was entitled to have the identical wheat raised
upon the land delivered to him. And upon the refusal
of the respondent, through his agent, to accept the
wheat on the terms provided for in the lease, the appel-
lant had the undoubted right to retain the wheat with-
out a delivery in the first instance to him. The wheat
being in his possession under these circumstances, it is
quite clear to us that an action to recover the wheat, or
for damages for its conversion by the appellant, cannot
be maintained.

For these reasons, the court below erred in excluding

the judgment roll, which was material to show that the appellant had become the owner of the interest of Butler.

It is also contended by the appellant that the court erred in admitting in evidence, over his objection, the written acknowledgment of forfeiture above set out. We are of the opinion, for the reasons above stated, that the acknowledgment was immaterial as against the appellant, whose rights had attached in the property before such acknowledgment had been executed and delivered.

Judgment and order appealed from reversed.

THORNTON, J., BEATTY, C. J., SHARPSTEIN, J., and PATERSON, J., concurred.

MCFARLAND, J., dissented.