STOCKTON SAVINGS & LOAN SOC. v. PURVIS, Sheriff.*

No. 18,386; October 9, 1895.

42 Pac. 441.

**Pledge of Crops for Rent—Creditors of Lessee.**—An oral agreement between landlord and tenant that title to crops raised during the term should remain in the landlord, and that the crop was to be put in warehouse in the landlord's name, and that from a sale thereof the landlord was to retain as rent an amount equal to the rent reserved in the lease, and turn over the balance to the tenant, is merely an agreement that, after the crop was harvested and stored, it should become a pledge for payment of the rent, and does not create a lien which would support an action of conversion against a sheriff for levying on the crop while growing, and seizing it under attachment against the tenant as soon as harvested.

APPEAL from Superior Court, Stanislaus County; William O. Minor, Judge.

Action by the Stockton Savings & Loan Society against R. B. Purvis, sheriff. Judgment for plaintiff and defendant appeals. Reversed.

H. G. W. Dinkelspeil and Stonesifer & Needham for appellant; Nicol & Orr for respondent.

HAYNES, C.—Action for the conversion of seventeen hundred and seventy sacks of wheat. The case was tried by the court, and findings and judgment were against the defendant, who appeals from the judgment upon the judgment-roll alone

The findings show the following facts: Plaintiff, a corporation, was the owner of certain lands in Stanislaus county, and orally leased the same to one Dallas for the term of one year at a cash rental of $2,140. That it was further orally agreed and understood between the lessor and lessee "that the title to said crops raised thereon during said term was to remain in said plaintiff, it being agreed and understood that the said crop was to be hauled to the nearest warehouse, and stored in the name of the plaintiff herein; that from the sale of said crop plaintiff was to receive as rent, as aforesaid, the sum of

_____
*For subsequent opinion in bank, see 112 Cal. 236, 53 Am. St. Rep. 210, 44 Pac. 561.

$2,140 cash, and the overplus, if any, was to go to and be the property of said R. Dallas; . . . . and that no part of said crop should be in any way subject to the disposal of said Dallas.'' Under this oral agreement Dallas sowed the lands to wheat and barley with his own personal means, and received no advances of any kind from or through the plaintiff. Before the crop was harvested, Eppinger & Co. brought suit against Dallas and wife to recover the sum of $8,935.77, and caused a writ of attachment to be issued therein, and the defendant, as sheriff of said county, levied said writ upon the whole of the crop of wheat then growing upon said lands, and, after harvesting and sacking the same, removed it from said lands, and refused to deliver it to the plaintiff herein upon demand. Eppinger & Co. in due time obtained judgment against Dallas. The value of said wheat, after deducting the expense of harvesting and sacking, was found to be $1,417.56, and for that sum judgment was rendered for the plaintiff.

Appellant contends: First, that the plaintiff had no such title to or lien upon the wheat as would defeat the attachment; and, second, that the claim or demand served by the plaintiff upon the sheriff was insufficient in several particulars, and did not comply with the requirements of section 689 of the Code of Civil Procedure, as amended in 1891 (Stats. 1891, p. 20). The tenant, under the terms of the agreement above stated, was the owner of the crop at the time it was attached. ''A tenant for years or at will, unless he is a wrongdoer by holding over, may occupy the buildings, take the annual products of the soil, [and] work mines and quarries open at the commencement of his tenancy'': Civ. Code, sec. 819. The rent reserved in this case was not a share of the crop, whereby the landlord would have been a tenant in common with his lessee in the crops, and so in possession by his cotenant; but it was a money rent at a fixed sum, not even dependent upon the value of the crop. If the crop had been a total failure, or had been consumed by fire, Dallas would still have been liable for the stipulated sum of money as rent. In Farnum v. Hefner, 79 Cal. 575, 582, 12 Am. St. Rep. 174, 21 Pac. 955, it is said: ''It is undoubtedly true, as contended, that the landlord and tenant may, by agreement, provide that all of the crops raised upon the land may be delivered to and remain the property of the landlord and be disposed of by him, and such agreement will protect the title of the landlord

in the property as against an attaching creditor of the tenant. But it will be found, upon an examination of the cases cited by counsel, that in every instance where such an agreement is upheld it is made for the protection of the landlord in case of advancements by him, or for some other reason; in other words, there is some consideration shown for the agreement by which the title remains in the landlord.'' It may be further remarked that we find no case in which a verbal agreement is given the force and effect contended for by plaintiff. Besides, the claim or demand served by plaintiff upon the sheriff does not claim ownership of the wheat, or that it had any title thereto, but its claim was that said crops ''were and are now subject to the lien of said Stockton Savings and Loan Society for rent reserved to the amount of $2,140, and that said Stockton Savings and Loan Society was, at and prior to the time of your attachment, and is now, entitled to the possession of the whole of said harvested crop for the satisfaction of the said sum of $2,140, secured by such lien.''

It is conceded by plaintiff that the statute gives no lien for rent reserved; nor was the alleged lien of plaintiff created by a mortgage of the crop, because a crop mortgage, though authorized by statute, cannot be created by a verbal agreement, or otherwise than as provided by law. At the most, it was an agreement that when the crop should be harvested and stored, it should then become a pledge for the payment of the rent; and, as this agreement to pledge the wheat had not been executed, the wheat was subject to attachment in the action of Eppinger & Co. v. Dallas. This conclusion, we think, is fully supported by Hitchcock v. Hassett, 71 Cal. 331, 12 Pac. 228.

Counsel for respondent have cited several cases which should receive attention. These cases are cited to the proposition that the agreement between the landlord and tenant may be so formed as to secure to the owner of the land the ownership of the products until the performance of a stated condition. This proposition need not be disputed, provided it be understood that the agreement in question is in such form as to effect the ends stated. In Howell v. Foster, 65 Cal. 169, 3 Pac. 647, there was a written instrument by which the plaintiff leased and demised the land to Mayfield for a certain term, with a covenant, among others, on the part of Mayfield, that he would till land, etc., and at the proper time

would harvest and sack the grain, and thereupon deliver all of it to plaintiff, to be held by him as security for all advances made by the plaintiff to Mayfield; and said instrument further provided as follows: "And it is mutually covenanted and agreed that until such delivery and transfer by the party of the first part [plaintiff] all of said grain shall be the property of the said party of the first part, and the said party of the second part [Mayfield] shall have no right to dispose of any portion thereof." That case, as reported, does not disclose whether the lease was recorded, but the fact that it was in writing, and that it was to be security for advances, does appear; and, as the landlord was to have a portion of the crop, whereby he became a tenant in common with the lessee in the crop, and through his cotenant was in possession thereof, the distinction between that case and this is apparent.

The next case—Wentworth v. Miller, 53 Cal. 9—is not in point, as in that case the lessee agreed to pay the lessor a part of the crop as rent, and to give the lessor possession of the whole crop until the rent should be paid, so that in that case also the landlord was a tenant in common with the lessee in the crop, and in possession by his cotenant. The same distinction also exists between this case and that of Sunol v. Molloy, 63 Cal. 370.

In Blum v. McHugh, 92 Cal. 497, 28 Pac. 592, there appears to have been a written lease. At all events, no case is cited where a verbal lease, with an agreement, also verbal, for a lien upon the crop to secure the money rent, has been held to be valid without possession taken by the landlord.

The agreement between the lessor and lessee did not even give the lessor a right of entry to take the crop; nor was there any provision in the verbal lease giving the lessor the right to the possession of the crop until it was stored in the warehouse in the name of the lessor. There was no provision for a re-entry. The only express condition which could be broken by the lessee was that which required the grain to be stored in the name of the lessor. A growing crop is necessarily in the possession of the party who is in possession of the land, whether he be the owner or the lessee; and, in the absence of a statute authorizing a mortgage of the crop independently of the land, it is difficult to see how such a lien can be vested in one not in possession of the land as will authorize him

to pursue an action at law against one who takes the property. That such a lien may be created by a provision in the lease which is, in legal effect, a chattel mortgage, seems to be conceded by the great weight of authority; but in such case it is generally held to be necessary that the lease be recorded or filed as such mortgage—in the absence of any statute giving effect to the lien—in order to make it effectual against purchasers and creditors; but whether recording is necessary in this state need not be decided, since no case, here or elsewhere, that has been called to my attention, holds that a verbal agreement will create a lien in favor of the landlord which is valid against subsequent purchasers or creditors, unless he has obtained possession of the property upon which the lien was to operate. The judgment should be reversed, with directions to the superior court to dismiss the action.

We concur: Britt, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment appealed from is reversed, with directions to the court below to dismiss the action.