### GAZLAY et al. v. WILLIAMS.

(Circuit Court of Appeals, Sixth Circuit. July 30, 1906.)

#### No. 1,578.

1. BANKRUPTCY—COURTS—JURISDICTION—PROPERTY—TITLE OF TRUSTEES—DETERMINATION.

Where a lease of a building to a bankrupt passed to his trustee, and the lessors claimed that the lease was not assignable without their consent, the court of bankruptcy had jurisdiction of a proceeding by the trustee, in the nature of a bill to remove a cloud on his title, to determine his rights in such leasehold prior to a sale thereof.

2. LANDLORD AND TENANT—LEASES—ASSIGNMENT—FORFEITURE — CONSTRUCTION.

A lease provided that if the lessee assigned or sublet, or if the lessee's interest should be sold under execution or other legal process without the written consent of the lessors, their heirs or assigns, first had, or if the lessee or assigns should fail to keep any of the other covenants of the lease to be kept by the lessee, it should be lawful for the lessors to re-enter and declare a forfeiture. The leasehold was thereafter sold to B., subject to the terms, covenants, and conditions in the lease, under a decree in a suit brought by the lessors to foreclose their lien on the leasehold for nonpayment of rent, and, on B. becoming a bankrupt, his trustee claimed the leasehold as a part of the estate. *Held*, that the transmission of the leasehold from B. to his trustee in bankruptcy was neither a voluntary assignment of the lease nor a transfer under execution or other legal process, and did not, therefore authorize a forfeiture under the terms of the lease.

Appeal from the District Court of the United States for the Southern District of Ohio.

Oscar W. Kuhn, for appellants.

Pogue & Pogue (Province M. Pogue, of counsel), for appellee.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This appeal involves a controversy which arose in the course of the involuntary proceeding in bankruptcy against one Harry D. Brown, pending in the lower court. It is a controversy between the appellee, his trustee in said proceeding, and the appellants, who are lessors in a certain lease under which, at the time of the institution of said proceeding, said bankrupt held a certain leasehold estate. The lease covered certain premises on the east side of Vine street, between Fifth and Sixth streets, Cincinnati, Ohio, known as the "Majestic Café." It was executed July 16, 1902, and was for a period of 10 years from July 7, 1902, with the privilege of renewal for an additional 10 years, and was upon an annual rental of $7,000,

payable monthly, to secure payment of which a lien was retained in the lease on the leasehold estate thereby granted. The original lessee was one Joseph D. Kueny, and the bankrupt acquired the leasehold estate by purchase at a judicial sale in a suit brought by appellants, lessors in said lease, against said Kueny in the superior court of Cincinnati to enforce said lien. Suit was brought April 9, 1904, and the sale was had and confirmed in June and July, 1905. Pending the suit the premises were in charge of a receiver. The petition in said suit sought a sale of the leasehold estate, "subject to the terms, covenants, and conditions contained" in said lease; but the order of sale and confirmation contained no such provision. Said Brown, immediately upon his purchase, entered into possession, made extensive improvements on the property, and paid the rent regularly until January 1, 1906. On January 17, 1906, said bankruptcy proceeding was instituted against him, and on same date the appellee, Fletcher R. Williams, was appointed receiver therein. An adjudication was had on February 19, 1906, and on February 27, 1906, appellee was elected trustee. Upon his appointment as receiver, appellee took possession of the premises, and he has been in possession ever since, as receiver, until February 27, 1906, and as trustee since then. On February 1, 1906, appellee, as receiver, paid the rent for the month of January, and on March 6, 1906, as trustee, he paid it for the month of February. Both payments were made to the appellant W. H. Gazlay, who was acting as agent for all the lessors. Said leasehold estate was appraised as part of the assets of said bankrupt at the sum of $10,000. The controversy which arose in said proceeding concerned the leasehold estate in said premises under said lease held by appellee, and in particular the character of his title thereto. The lease contained a provision in these words:

"Provided, however, that if said rent or any part thereof shall remain unpaid for —— days after it shall become due and without demand therefor; or if said lessee shall assign this lease or underlet said leased premises or any part thereof, or if said lessee's interest therein shall be sold under execution or other legal process without the written consent of said lessors, their heirs or assigns, is first had; or if said lessee or assigns shall fail to keep any of the other covenants of the lease by said lessee to be kept, it shall be lawful for said lessors, their heirs or assigns, into said premises to re-enter and the same to have again, repossess and enjoy as in their first and former estate, and thereupon this lease and everything contained on the said lessors' behalf to be done and performed shall cease, determine and be void."

It was not contended by appellants that said provision affected the passage of the leasehold estate from Kueny, the original lessee, to said Brown by virtue of the proceedings in the superior court of Cincinnati, or its passage from said Brown to appellee upon his appointment as trustee, as of the date of the adjudication. But it was contended by them that a sale by appellee of said leasehold estate for the benefit of the creditors of said Brown would, because of said provision, operate as a forfeiture thereof, and that thereupon they would be entitled to enter and repossess themselves of the premises, and they seem to have notified appellee from the time of his appointment as receiver that they would not consent to such sale. In view of this contention on the part of appellants, the appellee, on March 1, 1906, filed a writ-

ten application in the lower court in said bankruptcy proceeding to have appellants brought before the court, the character of his title to said leasehold estate determined, and it quieted from the adverse claims of the appellants. Subpœna issued upon the application and was served upon all of the appellants. They appeared and moved the court to dismiss the application for want of jurisdiction in it to so proceed against them and dispose of their claim. This motion and the merits of the controversy were referred to the referee, who upheld the jurisdiction of the court and decided against appellants' claim. The matter was then brought before the lower court by a petition for review, which confirmed the order of the referee and dismissed the petition. This appeal is from that action of the lower court.

No point is made here as to that court not having jurisdiction to so proceed against appellants and dispose of the controversy between them and appellee. It is well settled that it had such jurisdiction. Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157. Nor is any point made as to the appellees' right to have the validity of the appellants' claim heard and determined in advance of a sale by him of the leasehold estate. His application to that end was in the nature of a bill to remove a cloud on his title. Blair v. City of Chicago, 201 U. S. 400, 26 Sup. Ct. 427, 50 L. Ed. 801. The arguments here relate solely to the merits of the controversy.

The appellee maintains, on several grounds, that a sale by him of the leasehold estate for the benefit of creditors will not work a forfeiture thereof. He contends that this case comes within the rule laid down in Dumpor's Case, 4 Coke, 119b (1 Smith's Lead. Cases, 15). That rule is that where a lease is upon a proviso that the lessee shall not alien without the special license of the lessors, if the license is once given, the condition is annulled, removed, or destroyed; that is, has spent its force, so that it can have no effect on a subsequent alienation. Here the interest of Kueny, the original lessee, was sold to said Brown by the procurement of appellants. This, it is urged, exhausts the condition and brings the case within the rule stated. On the other hand, it is contended by appellants that their case is prevented from coming within the rule by the fact that in their petition in the state court they sought a sale of the unexpired term of the leasehold estate, "subject, however, to the terms, covenants, and conditions contained" in the lease. It is to be noted in this connection that the sale that was had was one that was contemplated by the lease, in that a lien was retained therein on the leasehold estate created thereby to secure payment of the rent.

Appellee contends, further, that the acceptance of the rent for January and February from the appellee as receiver and trustee was a waiver of the right to claim a forfeiture in case of a sale by the appellee. In answer to this contention, it is urged by the appellants that appellee, as trustee, took title to the leasehold estate, the passage of the title thereto from the bankrupt to him not being affected by the condition in the lease, and therefore he had the right to pay the rent and appellants were bound to accept it. The other ground relied upon by appellee is that a sale by him as trustee for the benefit of creditors is not

forbidden by the condition, and will, therefore, not be a breach thereof, even though the case does not come within the rule in Dumpor's Case. In other words, treating the case as if Brown were the original lessee and not the assignee of Kueny through judicial proceedings, such a sale is not so forbidden, and hence will not be such a breach. It was on this last ground that the lower court placed its decision in favor of the appellee. Inasmuch as we think the lower court was correct in this position, it is not necessary for us to dispose of the other two grounds relied on.

Covenants against assignment and underletting contained in leases having the force of conditions are not favored by the courts. Jones on Landlord and Tenant, § 464, thus states the attitude of the courts towards such covenants:

> "Covenants against assignment or underletting are not favorably regarded by the courts, and are liberally construed in favor of the lessees, so as to prevent the restriction from extending any further than is necessary."

Judge Earl in the case of Riggs v. Pursell, 66 N. Y. 193, puts it more strongly. He says:

> "Such covenants are restraints which courts do not favor. They are construed with the utmost jealousy, and very easy modes have always been countenanced for defeating them."

This attitude of disfavor, however, does not permit resort to sophistical reasoning to read out of such a covenant that which it really contains. It simply requires that what is claimed to be within it shall be clearly and manifestly so, and that, if there is a felt doubt as to its being within it, it be excluded therefrom. The cases go very far towards holding that the mere letter of the covenant is controlling. Illustrations of this attitude and how far it has led courts to go are abundant in the reported cases. As, for instance, it has been held that an underletting is not a breach of a covenant against assignment (Jackson v. Silvernail, 15 Johns. [N. Y.] 277); that an assignment is not a breach of a covenant against underletting (Field v. Mills, 33 N. J. Law, 254), though there are other cases holding to the contrary of this; that a sublease of a part of the premises is not a breach of a covenant against underletting the premises (Roosevelt v. Hopkins, 33 N. Y. 81); that placing one in charge of the leased premises as servant or caretaker to look after it during the landlord's absence is not a breach of a covenant against assignment or subletting (Presby v. Benjamin, 169 N. Y. 377, 62 N. E. 430); that a mortgage of a leasehold interest and judicial sale under the mortgage is not a breach of a covenant against assignment, it being the law of New York, where it was so decided, that a mortgage is not a transfer of the legal title or the possession, but a mere security (Riggs v. Pursell, supra); that a delivery of a lease or security for money loaned operating as an equitable mortgage of the term secured by the lease is not a breach of a covenant not to let, set, assign, transfer, set over, or otherwise part with the premises devised in the lease (Doe v. Hogg, 4 Dowl. & Ry. 266); that a sale under execution against the tenant is not a breach

of a covenant against assignment or underletting (Farnum v. Hefner, 79 Cal. 575, 21 Pac. 955, 12 Am. St. Rep. 174) ; that an assignment by an assignee appointed in voluntary proceedings in insolvency is not a breach of a covenant not to lease, underlet, or permit any other person to occupy (Bemis v. Wilder, 100 Mass. 446) ; and that an assignment by one of two joint lessees is not a breach of a covenant against assignment by the lessee (Randol v. Scott, 110 Cal. 590, 42 Pac. 976). Dumpor's Case and those cases applying the rule laid down in it are likewise illustrations of this attitude and the extent to which it has taken the courts. Concerning that case, Jones on Landlord and Tenant, § 471, says:

"In the United States the rule in Dumpor's Case, while subject to some adverse criticism, has generally been received as settled law, though in many of the cases where the topic arose no actual decision upon the precise point was necessary."

This brings us to the case in hand. It is not necessary to consider the condition in question further than it relates to the assignment of the leasehold estate. It prohibits both voluntary and involuntary assignments. In so far as it prohibits voluntary assignments, the language is, "if said lessee shall assign this lease," and in so far as it prohibits involuntary assignments the language is, "or if said lessee's interest therein shall be sold under execution or other legal process." It is certain that passage of the leasehold estate from the bankrupt, Brown, to the appellee as of the date of adjudication, was not a breach of either branch of the condition. It was a passage by operation of law and not by the act of the bankrupt; and the passage was not through the medium of a sale. Indeed, it is not argued by appellants that such passage was a breach of the condition. On the contrary, it is conceded that it was not, and it is argued therefrom that the acceptance of the rent from the receiver and trustee was not an anticipatory waiver of a breach thereof by a sale by appellee for the benefit of creditors. This, then, being true—i. e., that the passage of the leasehold estate from the bankrupt to appellee was not prohibited by the condition—it would seem that a sale by the appellee for the benefit of the creditors is not prohibited thereby. It is hardly reasonable that the parties to the lease could have intended that such a passage was allowable, and yet that a sale by appellee was not, at least without specially providing that it was not. The sole purpose of the acquisition by the trustee in bankruptcy of the assets of the bankrupt is to reduce them to money and distribute the proceeds amongst the creditors ; and he has no right to hold them for any other purpose, except temporarily. And a consideration of the language of the condition shows that a sale by appellee of the leasehold estate is not within its terms. It is not within the voluntary branch thereof, because, if it may be said to be a voluntary assignment, it is not an assignment by "said lessee." It is not within the involuntary branch thereof, for though it may be said to be an involuntary assignment and, possibly also (though hardly so) a sale under legal process, it is not a sale of "said lessee's interest." It is a sale of the appellee's interest held by it for the

benefit of creditors and which passed to it notwithstanding the condition, by virtue of the bankruptcy proceeding.

The case nearest to the one in hand which we have found is that of Doe v. Bevan, 3 M. & S. 353. The covenant there was one that the lessee, his executors, administrators, or assigns, would not assign the indenture, or his or their interest therein, or assign the premises to any person whatsoever. The covenant was simply against voluntary assignment; but it took in, not only the lessee, but also his assigns. The lessee deposited this lease as security for money borrowed and became bankrupt, and the lease was sold by direction of the chancellor to pay that debt. It was held that the assignees under the commission in bankruptcy might assign the lease to vendee without forfeiture. Lord Ellenborough said:

"The courts have construed it to mean voluntary assigns as contradistinguished from assigns by operation of law, and, further than that, that the immediate vendee from the assigns in law is not within the proviso, the reason of which is that the assignee in law cannot be incumbered with the engagements belonging to the property he takes, such as, in this case, the carrying on the bankrupt's trade in the public house, which is a strong instance. In such cases, therefore, the law must allow the assignee to divest himself of the property and convert it into a fund for the benefit of creditors."

Le Blanc, J., said:

"There can be no doubt that the lessee might have relieved himself from all inconvenience by expressly providing in the lease that if the lessee should become bankrupt, or shall deposit the lease with any one, then the lease should be void."

And again:

"It is clear that there has been no assignment by the lessee himself. It is also clear that the lessee's becoming bankrupt is not a breach, but the assignees under the commission have assigned. They were bound to assign, because they took only as trustees for the purpose of disposing of the property to the best advantage for the benefit of creditors; and they are compelled under the order of the court of chancery to sell it in discharge of the debt of Whitbread & Co."

Bayley, J., said:

"It has never been considered that the lessee's becoming bankrupt was an avoiding of the lease within this proviso; and, if it is not, what act has the lessee done to avoid it? All that has followed upon the bankruptcy is not by his act, but by operation of the law transferring his property to his assignees. Then shall the assignees have capacity to take it, and yet not to dispose of it? Shall they take it only for their own benefit, or be obliged to retain it in their hands to the prejudice of the creditors, for whose benefit the law originally cast it upon them? Undoubtedly that can never be."

Instances of where the covenants involved expressly covered the bankruptcy of the lessee as well as sales of his estate under execution or other legal process may be found in the following cases, to wit: Davis v. Eyton, 7 Bing. 154; Doe v. David, 5 Tyrw. 126; In re Ells (D. C.) 98 Fed. 967.

The action of the lower court is therefore affirmed.