### JOHN LOWRY v. CITY OF DULUTH.[1]

January 13, 1905.

Nos. 14,166—(181).

**Assignment of Claim.**
> Section 277 of the charter of Duluth, relating to the assignments of contract for public work, construed, and *held* that it does not forbid or render void an assignment of the money due or to become due on the contract, made after the subject-matter of the contract has been completely executed by the contractor.

**Affidavit of Payment.**
> Under section 276 of the charter of Duluth, which provides that, before any final estimate and payment on a contract for public work shall be made, the contractor or his personal representative shall make and file an affidavit that all claims for labor have been paid, *held*, such affidavit may be made by an assignee of the balance due on the contract, who has personal knowledge of the facts required to be stated in the affidavit.

Defendant city being indebted to Oscar H. Anderson in the sum of $3,239.26 upon a completed contract for the construction of sidewalks, the latter assigned his claim to plaintiff who thereafter presented the

[1] Reported in 101 N. W. 1059.

account to the common council together with the requisite bond and an affidavit that all bills for labor and material used in the performance of the contract had been settled. The common council having approved said account and directed that the same be paid, defendant city appealed to the district court for St. Louis county. Issues were framed and the case was tried before Cant, J., who directed a verdict in favor of plaintiff for the full amount claimed. From a judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Bert Fesler,* for appellant.

*Baldwin, Baldwin & Dancer,* for respondent.

START, C. J.

On July 16, 1903, a contract was made between the city of Duluth and Oscar H. Anderson, hereafter referred to as the contractor, whereby he agreed to construct for the city certain cement walks during the year 1903. He entered upon the performance of his contract, and completed the work in substantial compliance with the terms thereof on November 15, 1903. Thereafter, and on December 8, 1903, he assigned to the plaintiff all of his rights under the contract, including all money due or to become due thereon, and authorized and directed its payment to the plaintiff, John Lowry. On February 29, 1904, the plaintiff requested of the common council of the city payment of the amount ($3,239.26) due on the contract, and offered to give a bond to secure the guaranty and maintenance of the work as provided by the contract. The common council then passed a resolution directing final estimates of the amount due on the contract to be made upon the execution and filing of such bond. The bond was made, duly approved and filed, and the final estimate made. On March 14, 1904, the plaintiff made and filed his affidavit that all claims for all work and labor performed on the contract had been paid in full. He had personal knowledge of the facts stated in his affidavit, for the reason that he had charge of the payrolls, and personally paid for all labor performed in the execution of the contract. The contractor had no personal knowledge in the premises. All claims for labor and material had in fact been paid before the estimate was made.

Before the plaintiff's claim had been paid, and on March 18, 1904, the city attorney, upon the request of seven taxpayers, appealed from

the decision allowing the claim to the district court of the county of St. Louis. The contractor and the plaintiff were made parties to the appeal. The contractor made no claim for the amount due on the contract. The cause was brought to trial before the court and a jury. The evidence received on the trial was undisputed, and sufficient to establish the facts we have stated. The trial court directed a verdict for the plaintiff for the amount claimed. Judgment was so entered, from which the city appealed.

Two reasons are here urged by the city why the judgment should be reversed. They are:

1. The assignment by the contractor to the plaintiff is void by reason of the provisions of section 277 of the charter of Duluth, which is in these words:

> No contract on which a bond or deposit is required as provided in this charter shall be assigned or transferred in any manner and any assignment or transfer thereof, except by operation of law, shall fully end and determine such contract and shall make the same null and void as to any further performance thereof by the contractor or his assigns, without any act on the part of the city; and the city through its proper authorities shall at once proceed to relet such contract, or may at its discretion proceed to complete the same as the agent and at the expense of such contractor and his sureties.

The purpose and meaning of this section are obvious. Its purpose is to secure honest bids by the real parties in interest for contracts to be awarded by the city. Such a result is manifestly a matter of great importance to the city, and the charter provisions in question must be construed, if it is fairly permissible, so as to effectuate, and not to defeat, such purpose. While the character and responsibility of the contractor who is to execute a contract for public work is a matter of importance to the city, yet, after the work has been fully executed in accordance with the contract, and all claims for work and materials have been fully paid, it is a matter of indifference to the city whether it pays the balance due for the work to the contractor, or his assignee of such balance. Accordingly this section of the charter forbids an assignment of the contract, and provides for the enforcement of the prohibition by

94 M.—7

making the contract void as to further performance of the contract without any act on the part of the city; and the city must at once proceed to relet such contract, or complete the same as agent of the contractor, and at his and his sureties' expense.

Now, it is clear that this section deals with assignments which are made before the work or thing to be done, which is the subject-matter of the contract, is completely executed, and not to an assignment of the amount due to the contractor for such performance of the work. It is only as to future performance of the contract by the contractor or his assigns that the contract is void in case of its assignment. Again, it is only such unperformed part of the contract that the city must relet or complete at the expense of the contractor and his sureties. If the subject-matter of the contract is fully executed, what is there left for the city to do but to pay the balance of the contract price? How can a city relet or complete a contract for public work which has already been fully completed? But it is insisted on behalf of the city that the doing of certain things which the contractor must do in order to entitle him to a final estimate and payment for his work—such as filing an affidavit that all claims for work have been fully paid—is a part of his contract. This may be conceded. It is, however, perfectly obvious that it has no relevancy to the particular charter provision here under consideration. How could the city relet or itself complete the contract, as to filing of the affidavit, or as to any other act which the contractor must perform, after the work is fully completed, as a condition precedent to his right to demand payment of the balance due on the contract? This charter provision explicitly declares just what the effect of the assignment of the contract shall be, and just what must be done. When a statute specifies the effect of a certain provision, courts will presume that all the effects intended by the lawmaker are stated. Sutherland, St. Const., § 327.

It would not only violate this rule, but lead to the absurd results we have suggested if the provisions of this section should be construed as including assignments of the money due on a contract for public work, made after the work has been completed. We hold that section 277 of the charter of the city of Duluth does not forbid or render void an assignment of the money due or to become due on a contract with the city, made after the subject-matter of the contract has been completely executed by the contractor.

2. The second reason urged why the judgment appealed from should be reversed is that neither the contractor nor his personal representative ever made and filed with the comptroller of the city the affidavit as required by section 276 of the charter of Duluth, which reads thus:

> Before any contractor or his personal representatives shall receive any estimates on any contract on which a bond or deposit is required as provided in this chapter, said contractor or his personal representatives shall make and file with the comptroller an affidavit that all claims for all work and labor to date, on the work for which an estimate is asked, have been fully paid.

The contention of the city is to the effect that the words "contractor or his personal representatives," as used in this section, must be construed as if the section read "contractor or his executor or administrator," and that the affidavit having been made in this case by the assignee, having personal knowledge as to the facts required to be stated in the affidavit, the city has no power to pay an honest debt amounting to some $3,300. What, then, is the meaning of the term "personal representatives," as used in this section 276? Primarily the term is to be construed as the equivalent of "executors or administrators," in the absence of some reason, suggested by the context and subject-matter of the statute using the term, for giving it some other meaning. It and the term "legal representatives" are sometimes used interchangeably, as signifying not only executors or administrators, but also those who legally stand in place of, or represent the interests of, another. Walter v. Hensel, 42 Minn. 204, 44 N. W. 57; Schultz v. Citizens Mut. Life Ins. Co., 59 Minn. 308, 61 N. W. 331; Willoughby v. St. Paul German Ins. Co., 80 Minn. 432, 435, 83 N. W. 377; Argall v. Sullivan, 83 Minn. 71, 85 N. W. 931; Staples v. Lewis, 71 Conn. 288, 41 Atl. 815; Hammond v. Mason & H. O. Co., 92 U. S. 724.

We are then to inquire whether the subject-matter of this section suggests any necessary or good reason why the term should not be given its usual and technical meaning, but the broader meaning we have indicated. If the term is to be construed as including only executors and administrators, then, if the contractor was a corporation, it could never be paid, for a corporation can only act by representatives, and it can never have any executors or administrators. If an individual contractor fully

completes his contract, and pays for all labor and materials entering into its performance, and then becomes insane before making his affidavit, his claim cannot be paid. His guardian, although his legal representative, using the term in its broader sense, would not be his personal representative, giving to the term its narrow and technical meaning. Again, if the contractor did not have personal knowledge that all claims for all the work and labor had been paid, but his superintendent did have, and should make the affidavit, yet the contractor could not be paid, for the affidavit cannot be made upon information and belief of the contractor. There is no good reason why the affidavit should not be made by a legal representative or assignee of the contractor, having personal knowledge in the premises, for the object in requiring it is not to set a trap for the unwary, but to satisfy the city that all labor claims have been paid.

We are of the opinion, based upon the reasons suggested, and we so hold, that the term "personal representatives," as used in this section, was not intended to be limited to its technical meaning, but that it includes those persons who may stand in the place of, or represent the interests of, the contractor, including his assignee of the money due on his completed contract.

Judgment affirmed.