DIXON-REO COMPANY, a Corporation, Respondent, v. HORTON MOTOR COMPANY, a Corporation, Appellant.

(191 N. W. 780.)

**Assignments — provision not to assign goes only to performance and does not affect assignment of money due thereon made after cancelation.**

A provision in a contract between an automobile distributor and an automobile dealer to the effect that the dealer will not assign the contract or any rights thereunder without the written consent of the distributor goes only to the rights and duties incident to the performance of the contract, and does not render void an assignment by the dealer of the money due on the contract,

Note.—On property and rights assignable, see 2 R. C. L. 299; 1 R. C. L. Supp. 584; 4 R. C. L. Supp. 120.

made after the contract has been canceled, and the obligations assumed by the dealer thereunder have been fully discharged.

Opinion filed December 16, 1922.

Assignments, 5 C. J. § 31 p. 865 n. 20; § 44 p. 877 n. 7 New; § 47 p. 883 n. 39.

Appeal from the district court of Grand Forks County, *Englert,* J. Action to recover moneys due upon a contract.

Defendant appeals from a judgment and from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

Affirmed.

*Lawrence, Murphy & Nilles,* for appellant.

While counsel feels there is merit in the other assignments of error, yet we feel that the propositions hereinafter urged are so conclusive in favor of the defendant that we are satisfied to permit the judgment of this court to rest upon the determination of such question.

The general rule with respect to assignments of contracts, and stipulations forbidding the same is stated in 5 C. J. pp. 874–876.

The rule is also well stated in the case of American Bonding Co. v. R. R. Co. 124 Fed. 87, where the court said in part:

"In Pollock on Contracts, p. 201, it is stated that the origin of the rule that the benefit of a contract, i. e., the right of one party thereto to have the other perform an obligation on his part arising therefrom could not be assigned at common law, so as to enable the assignee to sue in his own name for a breach thereof was attributed by Coke to the 'wisdom and policy of the founders of our law' in discouraging maintenance and litigation. In opposition to this the author states: 'But there can be little or no doubt that it was in truth a logical consequence of the primitive view of a contract as creating a strictly personal obligation between the creditor and the debtor.' . . .

"In the case of Devlin v. New York, 63 N. Y. 8, Judge Allen says: 'Parties may, in terms, prohibit the assignment of any contract, and declare that neither personal representatives nor assignees shall succeed to any right in virtue of it, or be bound by its obligations.' " The rule is also so stated in 2 R. C. L. p. 599.

And in the case of Carter v. State, involving certain rights under an assignment of a contract of printing with the state (8 S. D. 156), the court cites with approval the following language used by the court in 63 N. Y. 8:

"As said by the court of appeals of New York in Devlin v. Mayor, 63 N. Y. 8, the 'assignability of a contract must depend upon the nature of the contract and the character of the obligations assumed, rather than the supposed intent of the parties, except as that intent is expressed in agreement. Parties may, in terms, prohibit the assignment of any contract, and declare that neither personal representatives nor assignees shall succeed to any rights in virtue of it, or be bound by its obligations."

Carter v. State, 8 S. D. 156.

And in the famous and leading case of Mueller v. Northwestern University, 195 Ill. 236, 88 Am. St. Rep. 194, 63 N. E. 110, it was said:

"The parties to a contract may, in terms, prohibit its assignment so that an assignee cannot succeed to any rights in the contract by virtue thereof to him."

*McIntyre, Burtness & Robbins,* for respondent.

Where a contract is wholly executed the balance which may be due thereunder may be assigned notwithstanding restriction in the contract against assignment thereof. Butler v. San Francisco Gas & E. Co. 141 Pac. 818.

The mere assignment of moneys due or to become due although the contract may not be assigned, is held not to be an assignment of the contract. 141 Pac. 818.

The same rule has been laid down in the following cases: National Surety Co. v. Maag, 86 N. E. 862; Chapin v. Pike, 68 N. E. 42; Taylor v. Black Diamond Mine Co. (Cal.) 25 Pac. 51.

Where the contract contemplated the performance of personal services involving the exercising of knowledge, taste or skill it is not assignable by the party under obligation to make such performance. Money due under contract or personal services can be assigned notwithstanding the contract itself is not assignable. 5 C. J. 882. 1 Williston, Contr. p. 787; Fortunato v. Patten (N. Y.) 41 N. E. 572.

A provision that a contract shall not be assigned or sublet will not

invalidate an assignment of the money earned by the contractor under the contract. Bank of Harlan v. Bayonne (N. J.) 21 Atl. 478; Johnson v. Eklund (Minn.) 75 N. W. 14; Sharp v. Edgar, 3 Sandf. 379.

The defendant has waived its right to insist that the Dixon Motor Company could not assign to plaintiff the money due from defendant, even conceding for sake of the argument that defendant's construction of the clause in question is the correct one. Williams v. Corey, 21 N. D. 509; Griggs v. Landis, 21 N. J. Eq. 494; Barker Auditing Co. v. Bennett, 106 N. E. 990.

CHRISTIANSON, J.   On June 30th, 1919, the defendant entered into two written contracts with George Dixon and Homer Dixon, doing business as copartners under the firm name of Dixon Motor Company. Under these contracts the defendant granted to said Dixon Motor Company the exclusive right to sell Maxwell automobiles and trucks in certain specified territory in the northeastern part of North Dakota and the northwestern part of Minnesota. The prices to be paid the defendant by said Dixon Motor Company for such automobiles and trucks, and the discounts or commissions to be paid by said defendant to said Dixon Motor Company for the sales made were specifically stated in the contracts. According to their terms the contracts were to continue in force and govern all transactions between the parties thereto until June 30, 1920; but the contracts contained provisions to the effect that either party should be at liberty to cancel and terminate the same at any time upon written notice to the other party. The Dixon Motor Company was required to make, and did make, a deposit with the defendant of $250 "as a guaranty of the payment of his repair parts account and to avoid the necessity of C. O. D. shipments of such repair parts, etc." The contracts, however, provided that at the expiration of the agreement such deposit, less any amount due the defendant, should be returned to the Dixon Motor Company. Each of the contracts contained the following stipulation on the part of the Dixon Motor Company: "That he will not assign this agreement nor any rights hereunder without the written consent of the distributor (Horton Motor Company), and that if he makes any change in any car or truck supplied by the company, the liability of the company under its warranty shall

cease." The defendant sold to the Dixon Motor Company a large number of automobiles and trucks, and also certain repairs, and received payment therefor according to the terms of the contracts. On April 13, 1920, the defendant canceled the contracts by giving written notice of cancelation. At the time of the cancelation the defendant was indebted in certain sums to the Dixon Motor Company as a result of the business relations existing under the contracts. On or about the 18th day of December, 1919, the members of the Dixon Motor Company organized the plaintiff corporation, and the corporation thereupon succeeded to the business of the copartnership. On October 13, 1920, the Dixon Motor Company, by written instrument, duly assigned to the plaintiff any and all sums of money due to the Dixon Motor Company from the defendant. The plaintiff thereupon brought this action to recover such moneys. The case was tried to a jury. A verdict was returned in favor of the plaintiff. Defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied, and defendant has appealed.

The sole question presented on this appeal is whether the assignment from the Dixon Motor Company to the plaintiff corporation was valid. In other words whether such assignment was inhibited and rendered invalid by the provision in the contracts to the effect that the Dixon Motor Company would not assign the agreement or any rights thereunder without the written consent of the Horton Motor Company.

The question so presented is primarily one of interpretation or construction of the contracts (1 Williston, Contr. p. 789) ; that is of ascertaining and giving effect to the intention of the contracting parties. (5 C. J. p. 877). A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. Comp. Laws, 1913, § 5896. And the whole of the contract must be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. Comp. Laws, 1913, § 5901. However broad may be its terms a contract extends only to those things concerning which it appears that the parties intended to contract. Comp. Laws, 1913, § 5908. And particular clauses of a contract are subordinate to its general intent. Comp. Laws, 1913, § 5910.

The contracts involved in this controversy related to the sale of auto-

mobiles and trucks. The defendant granted to the Dixon Motor Company the right to sell automobiles and trucks in certain allotted territory. The primary object of the contracts was the sale of automobiles and trucks. The contracts contained many provisions outlining the respective duties and obligations of the parties as regards the business relations thus assumed. The provisions were all intended to effectuate the main purpose of the contracts. There were good reasons why the defendant should insist that the Dixon Motor Company must not have the right to assign the contracts or any rights thereunder, except with the written consent of the defendant, as long as the contracts remained in force and the business relations to be controlled thereby continued to exist. But it is quite clear that most of these reasons would not exist after the business relations intended to be controlled by the contracts had been terminated. The contracts were executed on account of the business relations between the parties. Their purpose was to fix the obligations and rights of the contracting parties. The stipulation against assignment was merely collateral to the main purpose of the contracts, and designed as a means of securing and enforcing to the defendant performance of what the Dixon Motor Company had agreed to perform under them. Johnson v. Eklund, 72 Minn. 195, 75 N. W. 14. The business relations between the parties have ceased to exist. The contracts have been terminated. There is nothing further to be done by the Dixon Motor Company under it. The chief object of the contracts, that is, the subject-matter of the contracts, has been fully executed. At the time the Dixon Motor Company executed the assignment to the plaintiff corporation there was nothing left except the obligation resting on the defendant to pay the amount which it owed the Dixon Motor Company. There is nothing personal in the right to receive money due under a contract. 5 C. J. 564. And there is no reason readily apparent why the parties should have contracted that the right to receive moneys due under the contracts should be nonassignable. An assignment of the right of such moneys could not prejudice the defendant, for by the express terms of our statute the assignment would be without prejudice to its rights to any set-off or other defense which it had against the Dixon Motor Company at the time or before notice of the assignment. Comp. Laws 1913, § 7396.

Our statute, also, provides: "The burden of an obligation may be

transferred with the consent of the party entitled to its benefit, but not otherwise." Comp. Laws 1913, § 5782.

"A right arising out of an obligation is the property of the person to whom it is due and may be transferred as such." Comp. Laws 1913, § 5783.

"A thing in action is a right to recover money or other property by a judicial proceeding." Comp. Laws 1913, § 5445.

"A thing in action, arising out of the violation of a right of property or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except when in the cases provided by law it passes to his devisees or successor in office." Comp. Law 1913, § 5446.

While these statutory provisions do not nullify stipulations against assignments contained in contracts, 5 C. J. 876, they evidence a clear intention on the part of the legislature to distinguish between the burden of an obligation and a right arising out of an obligation, as regards the right of a party to transfer the same. The legislature has specifically said that the restrictions which the statute (§ 7382) places on the transfer of the burden of an obligation, shall not apply to the transfer of the right arising out of an obligation; that such right is the property of the person to whom it is due and may be transferred as such. § 5783, supra. The rule embodied in the statute is in harmony with that generally applied by the courts in dealing with contracts nonassignable in character. Thus, Corpus Juris (5 C. J. 882) says: "Money due under a contract for personal service can be assigned notwithstanding the contract itself is not assignable. See also 5 C. J. 864, 865.

In our opinion the stipulation against assignment under consideration here was not intended to prohibit the Dixon Motor Company from assigning the right to moneys due them from the defendant under the contracts, after the contracts had been canceled, and the business relations to which they related had been terminated. It will be noted that the stipulation is merely a part of a sentence. The remainder of the sentence relates to warranties given by the company as to cars and trucks sold under the contracts. We believe that the stipulation was intended to apply to the duties and rights of the parties as regards the performance of the contracts. That is, for instance, the Dixon Motor

Company could neither assign the contracts as a whole nor could they assign any rights thereunder, such, for instance, as the right to purchase cars or repair parts from the defendant at the prices stipulated in the contracts without the written consent of the defendant. After the contracts had been canceled and the business relations terminated certain moneys were due the Dixon Motor Company. The right to such moneys was the property of the Dixon Motor Company which they were entitled to transfer as such. § 5783, supra. It will not be assumed that they have deprived themselves of the right to transfer such property. In other words the stipulation prohibiting the assignment of the contracts and rights thereunder will not be construed as prohibiting the assignment of moneys which had been earned by the Dixon Motor Company, and which remained due to them, unless the language used evidenced a clear intention on the part of the contracting parties that it was to have that effect.

In considering the effect of a stipulation against assignment in a building contract, the supreme court of California, Butler v. San Francisco Gas & E. Co. 168 Cal. 32, 41, 141 Pac. 822, said: "One of the causes of action set up by plaintiff as a basis of a recovery against defendant was an assignment by William A. Butler to him of all moneys due or to become due under the original contract which was made after the work was fully performed and accepted by the defendant. The theory of the trial court was that this assignment of these moneys due under the original contract was void, as controverting the clause of the contract against assignment. But it is apparent from the terms of the prohibition against assignment that this went only to the performance of the work itself, which was to be personally supervised by William A. Butler. It did not apply to the benefits accruing on performance of the work. He was to perform the work before any liability could exist for the final payment. That work was done, and all that was assigned was the final payment earned, but not yet due. The mere assignment of moneys due or to become due, although the contract may not be assigned, is held not to be an assignment of the contract. National Surety Co. v. Maag, 43 Ind. App. 16, 86 N. E. 862; Re Wright, 18 L.R.A.(N.S.) 193, 85 C. C. A. 206, 157 Fed. 544; Dickson v. St. Paul, 97 Minn. 258, 106 N. W. 1053; Fortunato v. Patten, 147 N. Y. 277, 41 N. E. 572."

See, also, 1 Williston, Contr. pp. 787–789; 3 Cal. Jur. pp. 239–240; Johnson v. Eklund, 72 Minn. 195, 75 N. W. 14; Lowry v. Duluth, 94 Minn. 95, 101 N. W. 1059; Shively v. Semi-Tropic Land & Water Co. 99 Cal. 259, 33 Pac. 848.

It follows from what has been said that the judgment and order appealed from must be affirmed. It is so ordered.

BIRDZELL, Ch. J., and ROBINSON, GRACE, and BRONSON, JJ., concur.